IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) No. 05 CR 483 |
| v. | ) |
| | ) Judge Mark Filip |
| | ) |
| BORIS STRATIEVSKY, | ) |
| LEV STRATIEVSKY, and | ) |
| ALEX SHLOSBERG | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Defendants, Boris Stratievsky ("Boris") and Lev Stratievsky ("Lev") (collectively, "Defendants"), have moved to dismiss or strike Counts One and Two of the pending criminal indictment against them. (D.E. 70.)[1] For the reasons stated below, Defendants' motion is respectfully denied.

### BACKGROUND AND AVERMENTS IN THE INDICTMENT[2]

On May 26, 2005, the grand jury indicted Defendants on four counts: conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count One); a substantive money laundering attempt within the scope of that conspiracy, under the "government sting" provision, 18 U.S.C. § 1956(a)(3)(B), of the money laundering prohibitions (Count Two); and two counts of

---

[1] The various docket entries in this case are designated "D.E. __."

[2] It is elemental that a criminal defendant is presumed innocent until proven guilty, and equally elemental that an indictment is not any evidence of guilt. *See, e.g.*, Seventh Circuit Pattern Criminal Jury Instructions 2.01 & 2.03 (1999). Nonetheless, in evaluating a challenge to the facial adequacy of an indictment, the Court must naturally analyze the facial averments in the indictment, so those averments are set forth herein. *Accord, e.g.*, *United States v. Fassnacht*, 332 F.3d 440, 444-45 (7th Cir. 2003).

1

furnishing a false passport, in violation of 18 U.S.C. § 1543 (Counts Three and Four). (D.E. 1 ("Indictment").)[3] The alleged events relating to Counts One and Two involved the use of an FBI cooperating witness ("CW"), who represented himself to Defendants as an associate of Ukranian narcotics traffickers, as part of an FBI investigation. (Indictment ¶¶ 3, 7.) The CW informed Defendants that he and the supposed Ukranian narcotics traffickers wanted to launder large amounts of cash obtained from drug trafficking activities through a bank account in the United States. (*Id.* ¶ 7.) The Defendants had held themselves out to be in the business of laundering large amounts of money for others in Europe by transferring the money to numerous domestic and international bank accounts using fictitious names and shell corporations for the purpose of disguising the origin, nature, ownership, and control of the monies. (*Id.* ¶ 3.) Defendants allegedly retained a percentage of the monies they laundered as a "commission." (*Id.*)

In March 2000, the CW delivered $10,000 in cash to Lev and represented the cash to be the proceeds of narcotics trafficking, with the promise that the CW would be getting $40,000 in drug proceeds every two weeks. (*Id.* ¶ 9.) The CW sought Defendants' assistance in laundering these proceeds. (*Id.*) The Defendants introduced the CW to co-defendant, Alex Shlosberg, for the purpose of obtaining a fake Polish passport and other fake identification documents that would assist in the opening of a bank account under false pretenses, all for the purpose of laundering what were represented to be the proceeds of the drug trafficking. (*Id.* ¶ 8.)

In April 2000, Lev arranged for $9500 to be wire transferred to an FBI-controlled undercover bank account in New York City, with Lev keeping $500 as a fee for laundering the money. (*Id.* ¶¶ 12-13.) In May 2000, the CW then delivered $100,000 in cash to Lev in order to

---

[3] A co-defendant, Alex Shlosberg, was charged in Counts One, Three, and Four only.

have Defendants launder the money. (*Id.* ¶ 16.) On approximately June 1, 2000, $80,000 was authorized by a Russian bank to be wire transferred from a correspondent bank in Frankfort, Germany, which in turn wire transferred the $80,000 in funds to an undercover FBI bank account in New York City. (*Id.* ¶ 17.) Shortly thereafter, Lev assured the CW that Boris had "done a real clean job" laundering the money with the assistance of one of his Russian partners; the CW paid Defendants $20,000 as a commission for laundering the money. (*Id.*)

## LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) states: "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." *Id.*; *accord, e.g., United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997). "An indictment is constitutionally sufficient and satisfies Fed. R. Crim. P. 7(c)(1) if it states the elements of the crime charged, informs the defendant of the nature of the charge so [he or] she may prepare a defense, and enables the defendant to plead the judgment as a bar against future prosecutions for the same offense." *Id.*, 132 F.3d at 1189 (collecting authorities). Precedent teaches that "[f]acial sufficiency is not a high hurdle. Indictments need not exhaustively describe the facts surrounding a crime's commission nor provide lengthy explanations of the elements of the offense." *United States v. Bates*, 96 F.3d 964, 970 (7th Cir. 1996); *accord, e.g., United States v. Fassnacht*, 332 F.3d 440, 445 (7th Cir. 2003) (noting that "the indictment need only provide some means of pinning down the specific conduct at issue.") (internal quotation marks and citation omitted). "'Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.'" *Agostino*, 132 F.3d at 1189 (quoting *United*

*States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981)). The Seventh Circuit has "cautioned that the sufficiency of an indictment is to be reviewed practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner.'" *Fassnacht*, 332 F.3d at 445 (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)). In assessing the facial sufficiency of an indictment, "the defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *Id.*, 332 F.3d at 446 (collecting cases; internal quotation marks and citation omitted).

## DISCUSSION

The motion to dismiss Counts One and Two of the Indictment centrally implicates 18 U.S.C. § 1956(a)(3)(B), which states in relevant part that:

> (3) Whoever with the intent–
>
> * * *
>
> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity . . .
>
> * * *
>
> conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specific unlawful activity [commits an offense] .
> . . .
>
> [T]he term 'represented' means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

*Id.*; *accord, e.g., United States v. Kaufman*, 985 F.2d 884, 891-92 (7th Cir. 1993). Under this "sting" provision of the money laundering statute, the Government must prove that the Defendants: (1) conducted or attempted to conduct a financial transaction; (2) involving funds that were represented to be the proceeds of some unlawful activity—in this case, illegal drug

4

trafficking; (3) with the belief that the funds were proceeds of the criminal activity; and (4) with the intent to conceal or disguise the nature, source, or ownership of the funds. *See, e.g., id.* at 892-93 (affirming conviction under 18 U.S.C. § 1956(a)(3)(B)); *accord United States v. Leslie,* 103 F.3d 1093, 1103 (2d Cir. 1997).

Defendants assert that Counts One and Two should be dismissed or stricken because "[f]rom the four corners of the present indictment, it is clear that the required separation between the underlying criminal activity and later financial transactions is missing." (D.E. 71 at 5.) In this regard, Defendants claim that "[t]he financial transaction at issue in Count Two and the transaction described in ¶¶ 16 and 17 of Count One amounted to a transaction committed with alleged *gross receipts* of drug trafficking. The indictment, however, fails to cite a subsequent, separate financial transaction, committed with net proceeds." (*Id.* (emphasis in original).)

In support of their argument, Defendants cite precedents from what are, with all respect, inapposite contexts. That precedent teaches that certain money laundering prohibitions/prosecutions require a factual distinction between the monetary transactions inherent in the underlying criminal activity (which are part of the antecedent crime(s) of drug dealing, or mail fraud, or operating an illegal gambling operation, etc.), and the transactions conducted with the proceeds of such activity, which constitute the money laundering. *See United States v. Seward,* 272 F.3d 831, 836 (7th Cir. 2001) (stating, in the context of a prosecution for violation of 18 U.S.C. § 1957, that "[t]he transaction or transactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction, because the money laundering statutes criminalize transactions in proceeds, not the transactions that create the proceeds.") (internal quotation marks, punctuation, and citation omitted); *accord, e.g., United States v.*

5

*Mankarious*, 151 F.3d 694, 705 (7th Cir. 1998) (concluding, in the context of a prosecution under 18 U.S.C. § 1956(a)(1)(B)(i), that the underlying crime must have produced proceeds in acts distinct from the conduct that constitutes the alleged money laundering). Defendants also discuss *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002), in which the Seventh Circuit held that "the word 'proceeds' in § 1956(a)(1) denotes net rather than gross income of an unlawful venture." *Id.* at 476; *see also id.* at 475 ("[A]t least where the crime entails voluntary, business-like operations, 'proceeds' must be net income; otherwise the predicate crime merges into money laundering (for no business can be carried on without expenses) and the word 'proceeds' loses operational significance."). Apparently, in Defendants' view, this precedent supports the inference that in the instant case, which involved an undercover FBI sting operation and this subsequent prosecution under the "sting" provisions of 18 U.S.C. § 1956(a)(3)(B), the Government was required to allege that Defendants conducted "a subsequent, separate financial transaction, committed with net proceeds." (D.E. 71 at 5.) With all respect, the Court rejects Defendants' interpretation and extrapolation of the cited precedent.

Significantly, none of the cases cited by Defendants, including *inter alia*, *Seward*, *Mankarious*, and *Scialabba*, involves a situation where the defendant was charged under the sting provision of the money laundering statute, *i.e.*, § 1956(a)(3); instead, in all those cases, the defendants were charged under § 1956(a)(1) (which prohibits the use of proceeds of specified unlawful activity to promote that unlawful activity, or to engage in tax violations, or to conceal the nature and source of the proceeds), or § 1957 (which prohibits engaging in large-scale monetary transactions in property derived from specified unlawful activity), and the defendants *also* were charged with the predicate offense(s) that generated the proceeds. Thus, in that factual

setting, precedent has been sensitive to ensure "[t]he transaction or transactions that created the criminally-derived proceeds [are] distinct from the money-laundering transaction, because the money laundering statutes criminalize transactions in proceeds, not the transactions that create the proceeds." *Seward*, 272 F.3d at 836.

In the present case, involving a prosecution under the "government undercover operation" or "sting" provision of the money laundering prohibitions, 18 U.S.C. § 1956(a)(3), the context for the prosecution is distinct. When an FBI agent who is operating undercover presents himself or herself as a large-scale narcotics trafficker who needs money laundered, the FBI is not *really* engaging in underlying narcotics sales to generate the undercover funds that "need to be laundered." The same is obviously true when that FBI agent alternatively presents himself or herself as a putative operator of a child pornography ring, or as a supposed financial intermediary who is hoping to "clean" money that will be funneled to a domestic or foreign terrorist group. As a result, the concern identified in caselaw interpreting other sections of the money laundering prohibitions—about separating the actual underlying criminal activity from the financial transactions that constitute the laundering—simply does not adhere, nor is it, with all respect, sensible to attempt to discuss the situation in such terms. Again, the underlying criminal activity is merely a fictional part of the undercover FBI ruse designed to disprove or confirm, as the facts may be, the activities of the suspected money launderers. Thus, there is no danger of "simply add[ing] to the penalties for various crimes in which defendants make money" where the underlying unlawful activity is only a fictional construct for the purposes of the § 1956(a)(3) undercover representation. *United States v. Conley*, 37 F.3d 970, 979 (3d Cir. 1994) (analyzing conviction under 18 U.S.C. § 1956(a)(1)(A)(i)).

Although the government is not required to assert factual theories in an indictment, in the instant case, as in most, there are some factual allegations in the Indictment. Those allegations confirm the materially distinct setting of an undercover sting money laundering prosecution, as compared to a situation where the defendants are engaging in underlying criminal activity and also are participating in financial transactions that comprise the alleged money laundering. Thus, the Indictment does not allege that the Defendants were engaged in narcotics trafficking at all: instead, the Defendants "held themselves . . . out to be involved in and participants in the business of laundering large amounts of money for others in Europe by transferring said money to numerous domestic and international bank accounts using fictitious names and identities and shell corporations for the purpose of concealing and disguising the origin, nature, source, ownership and control of the money." (Indictment ¶ 3.) This laundering of proceeds generated by other individuals, in criminal activities in which Defendants were not involved, was then accomplished through, *inter alia*, "the purchase of numerous expensive pieces of real estate in the name of defendant LEV STRATIEVSKY" (*id.* ¶ 4), the use of false and counterfeit passports "for use in disguising the ownership, control and source of [the] money" (*id.* ¶ 5), and the use of "shell corporations and bank accounts using fictitious names intended for use in receiving such proceeds" (*id.* ¶ 6). In addition, the CW who came to Defendants seeking their assistance presented the monies to be laundered as "cash obtained from drug trafficking" by "Ukranian narcotics traffickers," not by Defendants themselves. (*Id.* ¶ 7; *see also id.* ¶ 9 (the CW would "be getting $40,000 in drug proceeds every two weeks" that needed to be laundered).) Thus, this case, involving an undercover investigation, presents the "classic money laundering" scenario, with "efforts to transform ill-gotten funds into apparently innocent assets or funds that the

8

criminal can use later with impunity." *United States v. Esterman*, 324 F.3d 565, 572 (7th Cir. 2003). There is no actual underlying criminal activity in which *anyone* is actually involved, nor are Defendants in any danger of being held accountable for the underlying criminal activity as well as money laundering for engaging in monetary transactions that are part and parcel of their involvement in the antecedent criminal activity itself. *See generally Savage*, 67 F.3d at 1442 ("Congress appears to have intended the money laundering statute to be a separate crime distinct from the underlying offense that generated the money to be laundered.") (internal quotation marks and citation omitted). As a result, the concern about ensuring that a defendant is not punished for money laundering each time he simply engages in the underlying, antecedent criminal activity, is not present. *Accord Esterman*, 324 F.3d at 572 (noting that cases in which money laundering convictions have been upheld "have in common the existence of more than one transaction, coupled with either direct evidence of intent to conceal or sufficiently complex transactions that such an intent could be inferred. In contrast, the cases in which money laundering charges have not succeeded are typically simple transactions that can be followed with relative ease, or transactions that involve nothing but the initial crime.") (collecting cases).

For the same reasons, the question of whether the fictitious proceeds were gross or net of expenses of underlying criminal operations is not germane to the offenses charged in Counts One and Two. In *Scialabba*, the defendants were convicted of running an illegal video poker gambling business, various tax offenses, and money laundering under 18 U.S.C. § 1956(a)(1). *Id.*, 282 F.3d at 476. The defendants allegedly committed the offense of money laundering in *Scialabba* when they "handed some of the money in the coin boxes over to the outlets' owners and used more of that revenue to meet the expenses of the business . . . ." *Id.* The Seventh

Circuit vacated the convictions for money laundering based on its holding that the term "proceeds" in § 1956(a)(1) denotes net, rather than gross income of unlawful activity. *Id.* at 478. By adopting this construction, the court stated that it avoided an interpretation of § 1956(a)(1) where

> every drug dealer commits money laundering by using the receipts from sales to purchase more stock in trade, . . . [or where] a bank robber commits money laundering by using part of the loot from one heist to rent a getaway car for the next, and so on. An embezzler who spent part of the take on food and rent, in order to stay alive to cook the books again, would be a money launderer too. Yet none of these transactions entails financial transactions to hide or invest profits in order to evade detection, the normal understanding of money laundering.

*Id.* at 476.

The Court notes that in *Scialabba* the Seventh Circuit reviewed a conviction under § 1956(a)(1)—it did not hold that an indictment for money laundering under § 1956(a)(3), the undercover sting provision, had to include an allegation that the "laundered" proceeds were net rather than gross income of the non-existent and hypothetical underlying criminal operation. Again, with all respect, the "gross proceeds" versus "net proceeds" distinction is meaningless in the context of the present case, and the consequences that concerned the Seventh Circuit in *Scialabba* are not implicated. Defendants are not alleged to have engaged in any illegal drug trafficking operations and are not alleged to have generated the illegal proceeds—the putative "illegal proceeds" came from the CW, not from any business of Defendants. Thus, there is no danger that the Defendants will be doubly punished under the money laundering statutes and the narcotics statutes for simply engaging in transactions concerning the operational expenses of an (non-existent) illegal drug business using the (fictitious) proceeds of that drug business.

The other cases that Defendants cite to support their "net proceeds" argument are

similarly inapplicable to the situation at hand. In *United States v. Christo*, 129 F.3d 578 (11th Cir. 1997) (per curiam), the Eleventh Circuit reversed a defendant's conviction for money laundering under 18 U.S.C. § 1957, where the Court concluded that the defendant's underlying criminal activities of bank fraud and misapplication of bank funds were not complete at the time of the alleged laundering, and so had not generated proceeds to be laundered. *Id.* at 581. Likewise, in *United States v. Johnson*, 971 F.2d 562 (10th Cir. 1992), the Tenth Circuit reversed a defendant's convictions under § 1957 on the basis that the wire transfers made to the defendant were not criminally derived property until the defendant actually gained access to or possession of the funds. *Id.* at 570.

Unlike the situation in *Christo* and *Johnson*, in this case, the Government need not prove that the funds used in the undercover "laundering" transaction were actual criminal proceeds at the time of the laundering attempt. Rather, the Government must prove under § 1956(a)(3)(B) that the CW made, and the Defendants believed, the predicate representation that the funds were proceeds of specified illegal activity. *See United States v. Calva*, 979 F.2d 119, 123 (8th Cir. 1992) (finding that "the government informant's statement that the money he was using to purchase drugs from [defendant] came from the illegal sales of drugs" established the elements of the crime of money laundering under 18 U.S.C. § 1956(a)(3)(B)). That allegation has been sufficiently advanced.

Moreover, and independently, the Court notes that the Indictment appears to be most fairly read to allege that the CW was presenting net monies from the drug activities of the Ukranian drug traffickers to be laundered, not gross proceeds that were being simply recycled through the drug business to continue its operations. (*See, e.g.*, Indictment ¶ 9 (CW represented

11

that he needed Defendants' "assistance in laundering said [drug] proceeds with the promise that the CW would be getting $40,000 in drug proceeds every two weeks.").) This allegation is sufficient under applicable precedent for the Indictment to survive a facial challenge. *See, e.g., Fassnacht*, 332 F.3d at 445 (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)).

The Court concludes that the Government has sufficiently alleged the elements of a violation of § 1956(a)(3)(B)). *See Kaufmann*, 985 F.2d at 892. The Indictment sets forth the elements of the offense in the terms of the statute, *Agostino*, 132 F.3d at 1189, and satisfies the requirements of Fed. R. Crim. P. 7(c)(1) by providing the essential allegations constituting the offense charged. (*See, e.g.*, Indictment ¶ 2 (alleging that defendants conspired "to conduct, attempt to conduct and cause to be conducted financial transactions, in and affecting interstate and foreign commerce, involving property represented to be the proceeds of specified unlawful activity, namely, the distribution of a controlled substance . . . with the intent to conceal and disguise the nature, source, ownership, and control of the property believed to be the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(b).").) As discussed above, Defendants' argument that the Government failed to allege that Defendants conducted "a subsequent, separate financial transaction, committed with net proceeds" is unavailing. Accordingly, the Court denies Defendants' motion to strike or dismiss Counts One and Two.

## CONCLUSION

For the foregoing reasons, the Court respectfully denies Defendants' motion to dismiss or strike Counts One and Two. (D.E. 70.)

So ordered.

_Mark Filip_
Mark Filip
United States District Judge
Northern District of Illinois

Date: 5-8-06